GIGGLES WORLD CORP., a New York Corporation d/b/a/ "Giggles", Plaintiff,

v.

TOWN OF WAPPINGER, a municipal Corporation of the State of New York And Tatiana Lukianoff, Zoning Administrator, Town of Wappinger Defendant.

No. 04 CIV. 2559(CLB).

United States District Court, S.D. New York.

Oct. 5, 2004.

---

Daniel A. Silver Esq., Silver & Silver LLP, New Britain, CT, Luke Lirot Esq., Tampa, FL, for Plaintiff.

Cynthia Dolan Esq., Boeggeman, George, Hodges & Corde, P.C., White Plains, NY, for Defendants.

### Memorandum and Order

BRIEANT, District Judge.

By motion filed on August 6, 2004 and fully submitted on September 10, 2004, Defendants Town of Wappinger ("Wappinger") and Tatiana Lukianoff, Zoning Administrator of the Town of Wappinger ("Lukianoff") move pursuant to Fed. R. Civ. Pro. 56 for summary judgment in this federal question case for violation of the First and Fourteenth Amendment of the United States Constitution. Plaintiff Giggles World Corp. ("Giggles") filed opposition papers on August 23, 2004.

The following facts are not in dispute and may be assumed for the purposes of this motion only. Giggles leased a building and land located at 1182 Route 9, Wappingers Falls, New York. On January 15, 2004, Mr. Tim Serino, the President and CEO of Giggles filed a Change of Occupancy, Building Permit, and Owner Consent Form with the Town of Wappinger. Giggles intended to use this property as a retail establishment. As described in its application for a retail store, submitted to Lukianoff on the same day, Giggles intended to sell apparel, including clothing, hosiery, lingerie, swim wear, and evening wear. Giggles also stated that it intended to sell a small selection of adult products, such as videos, periodicals, and other items. Giggles' application stated that these adult products would comprise no more than twenty percent (20%) of its offered products.

On January 22, 2004, Lukianoff inquired as to whether minors would have access to adult products. That same day, Giggles responded by submitting an addendum to its original application in which it explained that adult products would be located in a section of the store off-limits to minors. After Lukianoff made further inquiries, a second addendum was submitted on February 11, 2004, in which Giggles outlined the store's proposed inventory. This second addendum differentiated between the "less than 20%" that was to be comprised of adult products, and the remaining "80% or more" that was comprised of other inventory.

On February 12, 2004, Tatianoff issued a determination that Giggles' proposed use constituted an "adult use" under Section 240–05 of the Wappinger Town Code.[1] This

---

1. An adult use "includes adult book and/or video store, adult cabaret, adult hotel or motel, adult theatre, massage establishment and any other use which is distinguished or characterized by its emphasis on sexual activities or sexual anatomical areas and which exclude minors by reason of age. Any use, such as for example a hotel, which includes any form of adult use as a principal use or as an accessory use shall be considered an adult use for the purposes of this chapter."

determination further stated that such uses were permissible in the Highway Business ("HB") zone. This zone is where Giggles' property is located. However, under Section 240–75(B)(3), "no adult use shall be permitted in any building which is located within 400 feet of any residential zoning district." Giggles' property consists of a commercial building on the front portion of its lot, and a house and detached garage on the rear portion. The entire premises is zoned HB. The commercial building is within 400 feet of residential zoning, so if Giggles wants to sell adult products, it either has to use the house or detached garage in the rear of its lot, or it has to lease a separate lot that complies with the zoning regulations.

Under Fed. R. Civ. Pro. 56(c), summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." If this burden is met, it falls upon the non-moving party to prove that a disputed material fact exists that could influence the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Since Section 240–75 does not ban the sale of adult products, but rather regulates the location in which they may be sold, it is a content-neutral time, place and manner restriction on speech. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Time, place and manner restrictions upon speech are constitutionally valid so long as they are "content neutral, designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication." *See Id.* at 47, 106 S.Ct. 925.

*Content–Neutrality*

■ Wappinger's zoning restriction is "content-neutral" if it is aimed at regulating the secondary effects of adult uses on the surrounding community, such as crime rates, property values, and the quality of life. *Id.* at 48. Wappinger and Ms. Lukianoff allege that Section 240–75 was enacted for that very reason. Section 240–75(A) states that "the Town Board further finds that the uncontrolled proliferation of such uses [adult uses] would be inconsistent with the existing development and future plans for the Town of Wappinger in that they often result in influences on the community which increase the crime rate and undermine the economic, physical and social welfare of the community." *See Defs.' Notice of Motion, Ex. I.* Further support is found in the language of the resolution establishing the zoning ordinance. It states that it was passed because of growing concern over the "potential adverse impacts on the community," of adult entertainment businesses. *See Defs'. Notice of Motion, Ex. H, p. 17.* It also states that the ordinance was passed after the Defendants analyzed studies that documented the harmful effects of adult use businesses in cities around the country. *Id.* at 17. Giggles has not introduced evidence that the zoning ordinance was enacted for the purpose of suppressing protected expression. There is no dispute that the zoning regulation is content-neutral.

*Governmental Interest*

■ A municipality enacting an adult-use ordinance such as 240–75 must have a substantial governmental interest in doing so. The prevention of secondary effects is a substantial interest. *See Renton*, 475 U.S. at 50, 106 S.Ct. 925. However, non-obscene expressive conduct is constitutionally protected by the First Amendment. *See Virginia v. Black*, 538 U.S. 343, 351, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003).

Due to the heightened level of scrutiny utilized in assessing whether the Plaintiff has been deprived of First Amendment rights, a municipality is held to a higher level of scrutiny. This heightened scrutiny requires that the municipality prove some connection between the ordinance chosen to eliminate the unwanted secondary effects and the harm likely to occur in its absence. *See Buzzetti v. City of New York,* 140 F.3d 134, 144 (2nd Cir.1998) (an ordinance must be directed towards conduct that produces the secondary effects).

■ In enacting its adult use ordinance, the Defendants relied upon studies demonstrating the harmful secondary effects of adult use businesses in New York City, Islip, NY, Pleasantville, NY, Indianapolis, IN, St. Paul, MN, Phoenix, AZ, Austin, TX, and Los Angeles, CA. There were no independent studies conducted to demonstrate the harm likely to be caused within Wappinger by secondary effects, nor any studies showing the similarities between the conditions faced in Wappinger and those various regions. While Wappinger is entitled to rely upon studies performed in other municipalities rather than being forced to conduct its own, it still must present evidence that reliably indicates the relevancy of those studies to preventing similar secondary effects in Wappinger. *See City of Erie v. Pap's A.M.,* 529 U.S. 277, 296, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000)(stating that "the city need not 'conduct new studies or produce evidence independent of that already generated by other cities' to demonstrate the problem of secondary effects, 'so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.' ")

The ordinance must also be narrowly tailored to affect only those businesses that are known to produce the unwanted secondary effects. Failure to abide by this standard is fatal to the ordinance. *See*

*Renton,* 475 U.S. at 52, 106 S.Ct. 925. (Upholding the Renton ordinance because it was narrowly tailored to "affect only that category of theaters shown to produce the unwanted secondary effects, thus avoiding the flaw that proved fatal to the regulations in *Schad v. Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) and *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)"). In *Schad,* the Supreme Court noted that the ordinance was not narrowly drawn because it was not apparent how the conduct regulated, in that instance nude dancing, posed a greater risk of secondary effects than did other permitted conduct. *See Schad,* 452 U.S. at 73, 101 S.Ct. 2176. In a similar manner, it is not apparent how selling small amounts of adult material from the back of a store poses a significant risk of causing harmful secondary effects.

■ The burden is upon Wappinger to produce evidence in support of its belief that businesses such as Giggles are likely to produce harmful secondary effects. *See City of Los Angeles v. Alameda Books,* 535 U.S. 425, 438, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (stating that "this is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for the ordinance.") While Defendants' motion for summary judgment may demonstrate that various studies show the harmful secondary effects of adult use businesses in other municipalities, Defendants still must show some evidence that Giggles' business poses a risk of causing the same type of harm. It is unclear how such harmful secondary effects are likely to be caused by the small amount of adult products sold by Giggles. Also, Giggles has called into question the scientific reliability of the studies upon which the ordinance is based. In light of these unresolved issues of fact, summary judgment is inappropriate.

*Alternative Channels of Communication*

■ The First Amendment requires that a municipality "not effectively deny a reasonable opportunity to open and operate an adult business." *See Renton,* 475 U.S. at 54, 106 S.Ct. 925; *Young v. American Mini Theatres,* 427 U.S. 50, 73 n. 35, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Municipalities must provide alternative sites that are physically and legally available, within the municipality's borders, and part of an actual business real estate market. *See Hickerson v. City of New York,* 146 F.3d 99, 106 (2nd Cir.1998). The sites must be accessible to the public, have some likelihood of being available, and suitable for commercial activity. *See id.* at 106. The municipality does not need to identify specific sites that are actually available. It is sufficient to show general areas that are available for adult use business, but it must demonstrate that these areas are physically and legally available. *Id.* at 107.

■ Defendants state that the HB district consists of 291.7 acres. In this 291.7 acres, 39.31 acres from 41 lots may be used partially or entirely for adult use. This area constitutes only 2.9% of the Town's 16,008.5 total acres. The Supreme Court has, in the past, decided that small percentages of the total available area within a municipality may constitute alternative channels of communication. *See Renton,* 475 U.S. at 53, 106 S.Ct. 925 (stating that 5% of the available area was adequate.) These are very fact-specific inquiries. Giggles has disputed the actual number of lots that are available and suitable to operate an adult use business. This issue, whether such a small percentage of the total acreage of the Town presents adequate alternative channels of communication, cannot be resolved on a motion for summary judgment.

### Conclusion

Wappinger's Adult Use ordinance does not ban all adult uses and is therefore content-neutral. There is a disputed issue of fact as to whether the ordinance is narrowly tailored to serve a substantial governmental interest. A further disputed issue of fact exists as to whether the zoning ordinance provides reasonable alternative channels of communication. Defendants' motion for summary judgment is denied. A final pre-trial conference has been scheduled before this Court on Friday, October 22 at 9 A.M.

SO ORDERED.